## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action Number:

KRISTOPHER JAMES COMPANY,

    Plaintiff,

v.

NATIONAL BANK HOLDINGS CORP.,

    Defendant.

## COMPLAINT

Kristopher James Company ("KJC"), by and through its undersigned counsel, hereby states and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. KJC is a corporation organized and existing under the laws of the State of Texas, with its principal place of business located at 1406 Dunn Drive, Carrollton, Texas 75006.

2. Defendant National Bank Holdings Corporation ("NBH") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 7800 East Orchard Road, Suite 300, Greenwood Village, Colorado 80111.

3. This Court has jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because NBH regularly conducts business in Colorado and it is where the wrongful conduct alleged herein occurred.

## FACTUAL BACKGROUND

5. KJC is the leading provider of expense management and marketing programs for the financial industry. For over three decades, KJC has been serving financial institutions and providing financial forms, mailing services, hardware, and other operational supplies—deemed financial institution supply items.

6. NBH is a holding company for NBH Bank, N.A. that provides various banking products and financial services to commercial and consumer clients throughout the United States, including in Colorado.

7. In 2019, NBH entered into an Agreement for Use of Expense Management Platform (the "Agreement") with Deluxe Financial Services, LLC, d/b/a Deluxe Strategic Sourcing ("DSS").

8. In April 2022, KJC acquired DSS, and as a result, KJC became the party-in-interest to the Agreement with NBH.

9. The Agreement automatically renewed on December 8, 2022 and again on December 8, 2023.

10. Under the Agreement, and consistent with the purpose of the Agreement, KJC provided NBH financial institution supply items, as well as wide-ranging suite of services, including warehouse storage of supply items, use of KJC's expense management platform, inventory management reports, and accounting services.

11. Due to the nature of the Agreement, KJC earns revenue under the Agreement *only* when NBH purchases supply items from KJC. In other words, if NBH does not order any financial

institution supply items, KJC will not earn any revenue—even though NBH can still consume each of the services that KJC provides.

12. NBH continued to use KJC's services and received financial institution supply items from KJC through mid-2014. NBH and KJC representatives also communicated daily, shared statuses weekly, and tried to meet monthly.

13. KJC invoiced NBH for all the services and financial institution supply items it provided to NBH and NBH acknowledged receipt of all invoices.

14. To date, however, NBH has failed to pay KJC $74,381.03 for the services and financial institution supply items it ordered and received from KJC.

15. The Agreement also permits KJC to charge 1% interest per month on all overdue amounts.

16. Additionally, under the Agreement, NBH agreed to use its "best efforts" to purchase ***all of its*** financial supply items from KJC.

17. For instance, pursuant to the parties' Agreement, NBH entered 252 purchase orders, totaling 613 line-times, and 959 units of KJC products in October 2023.

18. Similarly, in November 2023, NBH entered 211 purchase orders, totaling 586 line-items, and 878 units of KJC products.

19. Additionally, in December 2023, NBH entered 217 purchase orders, totaling 623 line-items, and 4,475 units of KJC products.

20. ln December 2023, after the Agreement automatically renewed, a representative of NBH advised KJC that NBH had entered into another agreement with KJC's competitor for similar products and services.

3

21. In February 2024, NBH committed to continue to take best efforts to adhere to its obligations under the parties' Agreement, despite entering into a similar agreement with KJC's competitor.

22. By May 2024, however, NBH significantly reduced its ordering to 140 purchase orders, totaling 335 line-items and 506 units.

23. NBH's reduction of orders continued in June 2024 with only three purchase orders and only two purchase orders in July 2024.

24. By August 1, 2024, NBH stopped placing orders altogether with KJC—in clear violation of its best efforts obligations. In fact, while NBH has requested release of inventory, NBH has not made a single purchase of any financial institution supply item since July 2024.

25. KJC complained to NBH that it was in violation of the Agreement because it had (1) stopped using its best efforts to place orders with KJC and (2) NBH had failed to pay the outstanding invoices. In response, and rather than acknowledging its clear breaches of the Agreement, NBH manufactured complaints about KJC's service and products. NBH's after-the-fact complaints were transparently pretextual and fabricated to justify its breaches of the Agreement.

26. To date, NBH has refused to pay the invoiced amounts due since March 1, 2024 and has completely stopped ordering, in direct breach of the parties' Agreement.

27. As a result, KJC has been harmed as a direct and proximate result of NBH's conduct.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

28. KJC hereby re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 27 above as if fully set forth herein.

29. The Agreement is a valid contract.

30. At all relevant times, KJC performed all conditions and promises required under the Agreement, including, providing the services set forth in the Agreement and delivering the financial institution supply items ordered by NBH.

31. Under paragraph 1(A)(1) of the Agreement, NBH was required to use best efforts to purchase financial institution supply items from KJC.

32. NBH breached the Agreement when it severely reduced and ultimately ceased purchasing financial institution supply items from KJC.

33. NBH also breached the Agreement by failing to pay KJC $74,381.03 for the services and financial institution supply items it ordered and received from KJC since March 1, 2024.

34. Further, under paragraph 16(C) of the Agreement, NBH agreed "to pay [KJC] for *all* costs incurred by [KJC] to enforce its rights under this Agreement, including reasonable attorneys' fees and costs of discovery" (emphasis added). NBH is accordingly liable not only for the damage that it caused resulting from its breaches, but also the costs and fees necessary for KJC to enforce its rights stemming from those breaches.

35. As a direct and proximate result of NBH's breach of the Agreement, KJC has been damaged in an amount to be determined at trial, but believed to be no less than $500,000, including but not limited to the amounts due, the storage expenses that KJC has had to incur, and lost profits

that KJC has suffered as a result of NBH's breaches, together with interest, attorney's fees, and costs. During the pendency of this action, as any date passes without payment and as NBH continues to breach the Agreement, KCJ also claims those amounts as damages.

## SECOND CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

36. KJC incorporates the preceding paragraphs as if fully set forth herein. KJC hereby re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 30 above as if fully set forth herein.

37. Implied in every contract is a covenant of good faith and fair dealing. Pursuant to that implied covenant, NBH was required to act in a manner that would not deprive or prevent KJC from obtaining the benefits under the parties' Agreement or frustrate or destroy the purpose of the Agreement.

38. KJC performed all conditions, covenants, and promises required of it under the Agreement, including, providing the services set forth in the Agreement and delivering the financial institution supply items ordered by NBH.

39. NBH materially breached the covenant of good faith and fair dealing within the parties' Agreement by, among other acts and omissions, failing and refusing to pay for the services that NBH purchased and received from KJC.

40. NBH further materially breached the covenant of good faith and fair dealing by failing to use best efforts to purchase *all of its* financial supply items from KJC.

41. As a direct and proximate result of NBH's breach of the Agreement, KJC has been damaged in an amount to be determined at trial. During the pendency of this action, as any date

6

passes without payment and as NBH continues to breach the Agreement, KCJ also claims those amounts as damages.

## PRAYER FOR RELIEF

WHEREFORE, KJC prays for judgment against NBH as follows:

(a) That the Court award KJC damages in an amount to be proven at trial but believed to be no less than $500,000;

(b) That the Court award KJC its attorney's fees and costs to the extent permitted by contract or law;

(c) For pre- and post-judgment interest; and

(d) For such other and further relief as the Court deems just and proper.

## JURY DEMAND

KJC hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 6th day of December, 2024.

                                              *s/ Maral J. Shoaei*
                                              Maral J. Shoaei
                                              DORSEY & WHITNEY LLP
                                              1400 Wewatta Street, Suite 400
                                              Denver, CO 80202-5549
                                              Telephone: (303) 629-3400
                                              Facsimile: (303) 629-3450
                                              E-mail: shoaei.maral@dorsey.com

                                              ***Attorney for Plaintiff Kristopher James Company***