IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action Number: 24-cv-03401-PAB-STV

KRISTOPHER JAMES COMPANY,

   Plaintiff,

v.

NATIONAL BANK HOLDINGS CORP.,

   Defendant.

## SCHEDULING ORDER

### 1. DATE OF SCHEDULING CONFERENCE AND APPEARANCES OF COUNSEL AND PRO SE PARTIES

A Scheduling Conference is scheduled for February 5, 2025 at 10:30 a.m.

**For Plaintiff Kristopher James Company ("KJC"):**

Maral J. Shoaei
DORSEY & WHITNEY LLP
1400 Wewatta Street, Ste. 400
Denver, Colorado 80202
Telephone: (303) 629-3400
Email: shoaei.maral@dorsey.com

**For Defendant National Bank Holdings Corp. ("NBH"):**

Zane Gilmer
Stinson LLP
1144 Fifteenth Street, Suite 2400
Denver, Colorado 80202
Telephone: (303) 376-8416
Email: zane.gilmer@stinson.com

## 2. STATEMENT OF JURISDICTION

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction), as Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over claims under Colorado law.

## 3. STATEMENT OF CLAIMS AND DEFENSES

### a. Plaintiff

KJC is the leading provider of expense management and marketing programs for the financial industry. For over three decades, KJC has been serving financial institutions and providing financial forms, mailing services, hardware, and other operational supplies—deemed financial institution supply items. In 2019, NBH entered into an Agreement for Use of Expense Management Platform (the "Agreement") with Deluxe Financial Services, LLC, d/b/a Deluxe Strategic Sourcing ("DSS"). In April 2022, KJC acquired DSS, and as a result, KJC became the party-in-interest to the Agreement. Under the Agreement, and consistent with the purpose of the Agreement, KJC provided NBH custom branded products and financial institution supply items, as well as wide-ranging suite of services, including warehouse storage of supply items, use of KJC's expense management platform, inventory management reports, and accounting services. Additionally, under the Agreement, NBH agreed to use its "best efforts" to purchase all of its custom branded products and financial supply items from KJC.

In December 2023, after the Agreement automatically renewed, a representative of NBH advised KJC that NBH had entered into another agreement with KJC's competitor for similar products and services. NBH subsequently committed to continue to take best

2

efforts to adhere to its obligations under the parties' Agreement, despite entering into a similar agreement with KJC's competitor. By May 2024, however, NBH significantly reduced its ordering even though it was still fully utilizing KJC's services. NBH's reduction of orders continued in June 2024 with only three purchase orders and only two purchase orders in July 2024. By August 1, 2024, NBH stopped placing orders altogether with KJC—in clear violation of its best efforts obligations. As a result of NBH's actions and KJC's numerous attempts for months to resolve the issues internally with NBH's representatives, KJC brought this action for breach of contract and breach of the implied covenant of good faith and fair dealing.

Further, for months, NBH refused to pay over $74,000 in outstanding invoices. NBH only agreed to pay for the outstanding invoices after KJC initiated this lawsuit and even then, NBH failed to pay the interest payment incurred under the Agreement. Additionally, while NBH requested delivery of its remaining inventory, NBH refused to conduct the necessary inspection and provide the necessary release in order for KJC to deliver the remaining inventory, despite KJC's repeated communications advising NBH of the same. NBH only waived its right to an inspection after KJC filed this lawsuit.

    b. Defendant

NBH and Deluxe Financial Services, LLC ("DSS") entered into an Agreement for Use of Expense Management Platform dated September 19, 2019 ("Agreement"). In 2022, KJC acquired DSS and took over the obligations under the Agreement from DSS. The Agreement required KJC to provide to NBH certain "general financial institution supply items" that were to be listed on Exhibit A of the Agreement and certain "Custom Branded Items" that were to be listed on Exhibit B of the Agreement, collectively referred

3

to as "DSS Sourced Products". The Agreement required NBH to "use its best efforts to place orders" with KJC of the items listed on Exhibit A and Exhibit B of the Agreement. Pursuant to the Agreement, "Title to the DSS Sourced Products shall pass to [NBH] upon [NBH]'s purchase of DSS Sourced Products." Beginning in 2023, NBH began experiencing issues with the products purchased from KJC, including damaged products, nonconforming products, missing or incomplete orders, and delayed processing and shipment. NBH raised these issues with KJC numerous times. KJC often failed to respond or, when it did respond, its response was not timely and only occurred after multiple follow-ups from NBH. And, when KJC finally did respond (if at all) the issues were not resolved. This went on for months. Making matters worse, KJC failed or refused to ship product that NBH had previously ordered and paid for. This too went on for many months. Eventually, because KJC failed or refused to comply with its obligations under the Agreement and failed to cure the breaches over many months, NBH had no other option but to notify KJC that it was terminating the Agreement and finding a new vendor that could provide the contemplated services to NBH. KJC still refused to ship the inventory that NBH had paid for months previously (in same cases nearly a year before), despite numerous demands to do so, and the fact that the Agreement expressly states that title to those products passed to NBH at the time of payment. Instead, KJC began demanding consideration that it was not entitled to in exchange for the return of NBH's property, including demanding a broad release, payment for "storage" fees for the paid-for inventory that it refused to provide to NBH, interest on separate invoices that NBH refused to pay due to KJC's improper retention of NBH's property, and other remuneration and consideration that KJC was not entitled to. In short, KJC held hostage NBH's property in

4

an attempt to use it as leverage to force NBH to provide funds and other consideration that KJC was not entitled to.

## 4. UNDISPUTED FACTS

The following facts are undisputed:

1. NBH is a holding company for NBH Bank.

2. In 2019, NBH entered into an Agreement for Use of Expense Management Platform with Deluxe Financial Services, LLC, d/b/a Deluxe Strategic Sourcing.

3. In April 2022, KJC acquired DSS, and as a result, KJC became the party-in-interest to the Agreement with NBH.

4. The Agreement automatically renewed on December 8, 2022 and again on December 8, 2023.

## 5. COMPUTATION OF DAMAGES

### a. Plaintiff

KJC seeks monetary damages in amounts to be determined, including but not limited to outstanding interest payments that NBH agreed to pay, but failed to do so, lost profits and storage fees. KJC also seeks pre- and post-judgment interest on all amounts to the extent permitted by law and statute. KJC further seeks an award of reasonable attorneys' fees, expenses, and costs incurred in connection with this lawsuit. KJC reserves the right to assert additional damages subject to any counterclaims filed by NBH.

### b. Defendant

NBH's response to the Complaint is not due until February 10, 2025. NBH is still evaluating its possible counterclaims, but it currently intends to counterclaim for breach of contract and civil theft. As such, it will seek damages related to the breach of contract,

5

including but not limited to amounts incurred as a result of KJC's repeated breaches of the Agreement, attorneys' fees and costs, and pre-and-post judgment interest. These amounts are still being calculated and will be supplemented as required and necessary throughout the case. Pursuant to its civil theft claim and C.R.S. §§ 18-4-401, -405, NBH will seek at least $260,810.16, which is 3X the value of the products KJC improperly withheld from NBH, plus attorneys' fees and costs. Because NBH's Answer and Counterclaims are not yet due, NBH reserves the right to include additional counterclaims and damages as part of its filed Counterclaims and otherwise amend the same as additional information is learned.

### 6.  REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

**a.  Date of Rule 26(f) meeting.**

The Fed. R. Civ. P. 26(f) meeting was held on January 15, 2025.

**b.  Names of each participant and party he/she represented.**

Maral Shoaei for Plaintiff

Zane Gilmer for Defendant

**c.  Statement of when Rule 26(a)(1) disclosures were made or will be made.**

The parties will exchange their respective Fed. R. Civ. P. 26(a)(1) Initial Disclosures on February 12, 2025. The parties agree that they will identify categories of relevant documents and begin production of documents on a rolling basis.

**d.  Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).**

Please see Section 6(c) above.

**e.  Statement concerning any agreements to conduct informal discovery.**

The parties are currently in discussions to exchange informal discovery regarding the amount of damages, if any, in order to facilitate a potential early resolution.

**f.   Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.**

The parties agree to meet and confer to pursue opportunities to reduce discovery and other litigation costs (including the use of a unified exhibit numbering system). The parties also agree to electronic service of discovery requests and responses. The parties further agree that before a party files a motion to compel, counsel for that party must confer with opposing counsel by telephone or video conference or in person to discuss disagreements regarding discovery requests. If the parties cannot resolve their dispute during the conference, then the parties may file a joint motion requesting a telephone or video conference to discuss the discovery dispute. The joint motion must contain a statement certifying that the parties discussed the discovery dispute and have been unable to resolve their disagreements.  If one of the parties refuses to join the motion, the moving party may submit the motion without including the other party. Upon receipt of the joint motion, the Court will set a telephone conference to discuss the discovery dispute and will determine whether additional written submissions are required to resolve the dispute.

**g. Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.**

The Parties agree that the case will involve a fair amount of discovery and that most records are maintained electronically. The parties will meet and confer to develop a

joint protocol for the exchange and production of electronically stored information. The parties shall, whenever practical, produce electronic copies of documents rather than paper copies. If the parties cannot agree on a procedure for exchanging electronically stored information, either party may submit a motion with the Court seeking an order governing such a procedure.

Further, the parties agree to be governed by Federal Rule of Civil Procedure 26(b)(5)(B) with respect to claims of privilege and Federal Rule of Evidence 502(b) with respect to inadvertent production of privileged materials. By this proposed order, the parties request that the Court hereby order protection against waiver of privilege by inadvertent production to the fullest extent consistent with Federal Rule of Evidence 502(d).

**h. Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.**

Although the parties have had discussions regarding early resolution of this action, no agreement has yet been reached.

## 7.  CONSENT

All parties ☐ [have]  ☒ [have not] consented to the exercise of jurisdiction of a magistrate judge.

## 8.  DISCOVERY LIMITATIONS

**a.  Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.**

The parties anticipate taking the depositions of the parties, along with any endorsed experts. The parties anticipate taking no more than 5 depositions, per side, of lay witnesses and 2 depositions, per side, of expert witnesses. The parties agree to the

8

presumptive limit of 25 written interrogatories per side, including all discrete subparts, per Fed. R. Civ. P. 33(a)(1).

**b. Limitations which any party proposes on the length of depositions.**

The parties will follow the limits of one day of 7 hours as set forth in Fed. R. Civ. P. 30(d)(1) and will attempt to shorten the length where possible.

**c. Limitations which any party proposes on the number of requests for production and/or requests for admission.**

The parties agree to a limit of 25 requests for production and 25 requests for admission per side. Additional requests may be authorized by joint consent or the Court upon a showing of good cause.

**d. Deadline for service of Interrogatories, Requests for Production of Documents and/or Admissions:**

August 22, 2025

**e. Other Planning or Discovery Orders**

The parties agree that the present litigation necessitates a protective order and plan to jointly file a motion for entry of protective order as well as a proposed stipulated protective order with the Court.

**9. CASE PLAN AND SCHEDULE**

**a. Deadline for Joinder of Parties and Amendment of Pleadings:**

March 21, 2025

**b. Discovery Cutoff:**

October 6, 2025

9

 **c. Dispositive Motion Deadline:**

November 6, 2025

 **d. Expert Witness Disclosure:**

  **1. The parties shall identify anticipated fields of expert testimony, if any.**

While the parties have not made their final determination as to the need and anticipated fields for expert testimony, and each reserves the right to supplement their respective lists, each party currently anticipates relying on industry and economic damages expert testimony. The parties further reserve the right to endorse any necessary rebuttal experts.

  **2. Limitations which the parties propose on the use or number of expert witnesses.**

Each side may designate up to two (2) expert witnesses.

  **3. The parties shall designate all affirmative experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before: August 6, 2025.**

  **4. The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before September 8, 2025.**

 **e. Identification of Persons to Be Deposed:**

At this time, Plaintiff anticipates deposing the following persons: Kate Larkins; Jackie Proctor; Justin McMillan; representatives of Defendant pursuant to Rule 30(b)(6); any factual witnesses identified by Defendant; and any expert witnesses identified by Defendant.

At this time, Defendant currently anticipates deposing at least the following persons: Guy Becker; Warren Becker; representatives of KJC pursuant to Rule 30(b)(6); any factual witnesses identified by KJC; and any expert witnesses identified by KJC.

## 10.  DATES FOR FURTHER CONFERENCES

**a.  Status conferences will be held at the following dates and times:**

_____, 20__ at __ o'clock ____m.

**b.  A final pretrial conference will be held at the following date and time:**

January 7, 2026, at 10:30 a.m.

A Final Pretrial Order shall be prepared by the parties and submitted to the Court no later than seven (7) days before the final pretrial conference.

## 11.  OTHER SCHEDULING MATTERS

**a.  Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement.**

None

**b.  Anticipated length of trial and whether trial is to the court or jury.**

The parties anticipate a 5-day jury trial on all issues so triable.

**c.  Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/ Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building, La Plata County Courthouse, 1060 E. 2nd Avenue, Suite 150, Durango, Colorado 81301.**

At this time, there are no pretrial proceedings that the parties believe may be more efficiently or economically conducted in the District Court's facilities located in Colorado Springs or Grand Junction.

## 12.  NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a), the Uniform Civil Practice Standards for Magistrate Judges, and any additional Order of the assigned Magistrate Judge regarding discovery dispute procedures [if any].

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13.  AMENDMENTS TO SCHEDULING ORDER

This scheduling order cannot be altered or amended except upon a showing of good cause.

DATED at __Denver__, Colorado, this __5th__ day of __February__, 20__25__.

BY THE COURT:

_____
United States Magistrate Judge

APPROVED AS SUBMITTED ON January 29, 2025:

| | |
|---|---|
| *s/ Maral J. Shoaei* | *s/ Zane A. Gilmer* |
| Maral J. Shoaei | Zane A. Gilmer |
| Dorsey & Whitney LLP | STINSON LLP |
| 1400 Wewatta Street, Suite 400 | 1144 Fifteenth Street, Suite 2400 |
| Denver, CO 80202-5549 | Denver, CO 80202 |
| Telephone: (303) 629-3400 | Telephone: (303) 376-8416 |
| shoaei.maral@dorsey.com | zane.gilmer@stinson.com |
| | |
| ***Attorney for Plaintiff*** | ***Attorney for Defendant*** |

13