IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:24-cv-03401-PAB-STV

KRISTOPHER JAMES COMPANY,

    Plaintiff/Counterclaim-Defendant,

v.

NATIONAL BANK HOLDINGS CORPORATION,

    Defendant/Counterclaim-Plaintiff.

---

**NATIONAL BANK HOLDINGS CORPORATION'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

---

Defendant/Counterclaim-Plaintiff National Bank Holdings Corporation ("NBHC"), by and through undersigned counsel, respectfully submits this Answer, Affirmative Defenses, and Counterclaims to Plaintiff/Counterclaim-Defendant Kristopher James Company's ("KJC") Complaint.

## ANSWER TO COMPLAINT

## PARTIES, JURSIDCTION, AND VENUE

1. NBHC admits the allegations in Paragraph 1.

2. NBHC admits the allegations in Paragraph 2.

3. Paragraph 3 contains a legal conclusion for which no response is required.

4. Paragraph 4 contains a legal conclusion for which no response is required. NBHC admits that it regularly conducts business in Colorado, but denies that it engaged in any wrongful conduct.

1

## **FACTUAL BACKGROUND**

5.     NBHC is without sufficient information or knowledge concerning the allegations in Paragraph 5 and, therefore, denies them.

6.     NBHC denies that it is the holding company for NBH Bank, N.A. NBHC is the holding company for NBH Bank, which is a Colorado chartered bank. NBHC admits that it provides banking and financial services to its customers. The remaining allegations in Paragraph 6 are denied.

7.     NBHC admits the allegations in Paragraph 7.

8.     NBHC admits that a transaction between KJC and DSS occurred in 2022 at which time KJC became the party-in-interest to the Agreement with NBHC. NBHC is without sufficient information or knowledge of the specific details of the transaction to admit that KJC acquired DSS and, therefore, denies the same.

9.     Paragraph 9 refers to the Agreement, which is a document that speaks for itself. NBHC denies any allegations that are contrary to the terms of the Agreement.

10.    Paragraph 10 refers to the Agreement, which is a document that speaks for itself. NBHC denies any allegations that are contrary to the terms of the Agreement. NBHC admits that KJC provided to NBHC certain financial products pursuant to the Agreement, but those products were not always provided timely, nor were they fully conforming products.

11.    NBHC admits that KJC earns revenue under the Agreement when NBHC purchases items from KJC. NBHC denies the remaining allegations in Paragraph 11.

12.    NBHC denies the allegations in Paragraph 12.

13. NBHC admits the allegations in Paragraph 13.

14. Denied.

15. Paragraph 15 refers to the Agreement which is a document that speaks for itself. NBHC denies any allegations that are contrary to the terms of the Agreement.

16. Paragraph 16 refers to the Agreement which is a document that speaks for itself. NBHC denies any allegations that are contrary to the terms of the Agreement.

17. NBHC is without sufficient information or knowledge to admit or deny the specific allegations contained in Paragraph 17 and, therefore, denies the same. NBHC admits that it made purchases in October 2023.

18. NBHC is without sufficient information or knowledge to admit or deny the specific allegations contained in Paragraph 18 and, therefore, denies the same. NBHC admits that it made purchases in November 2023.

19. NBHC is without sufficient information or knowledge to admit or deny the specific allegations contained in Paragraph 19 and, therefore, denies the same. NBHC admits that it made purchases in December 2023.

20. NBHC is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 20 and, therefore, denies the same.

21. Denied.

22. NBHC is without sufficient information or knowledge to admit or deny the specific allegations contained in Paragraph 22 and, therefore, denies the same. NBHC admits that it made purchases in May 2024.

23. NBHC is without sufficient information or knowledge to admit or deny the specific allegations contained in Paragraph 23 and, therefore, denies the same. NBHC admits that it made purchases in June and July 2024.

24. Denied.

25. NBHC denies that it was in violation of the Agreement for any reason. NBHC admits that it repeatedly put KJC on notice of KJC's numerous and ongoing material breaches of the Agreement, including but not limited to, by providing damaged products, nonconforming products, failing to provide all products ordered, delaying the processing and shipping of orders, and otherwise failing to timely respond to inquiries and concerns and failing to remedy them, including by failing to replace or repair nonconforming products. NBHC also denies that these complaints were only lodged after-the-fact as they were documented repeatedly to KJC. NBHC further denies that it failed to pay any outstanding invoices that were due and owed.

26. Denied.

27. Denied.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

28. NBHC incorporates herein by reference its prior responses in Paragraphs 1 through 27 above as if fully set forth herein.

29. Paragraph 29 contains a legal conclusion for which no response is required.

30. Denied.

31. Paragraph 31 refers to the Agreement which is a document that speaks for itself. NBHC denies any allegation that is contrary to the terms of the Agreement. NBHC

denies the allegations in this paragraph to the extent they suggest that NBHC had an obligation to purchase products from KJC beyond those specifically provided for in the Agreement.

32. Denied.

33. Denied.

34. Paragraph 34 refers to the Agreement which is a document that speaks for itself. NBHC denies any allegation that is contrary to the terms of the Agreement. NBHC denies that it is liable for any purported damages suffered by KJC and denies that it is responsible for any costs or attorneys' fees.

35. Denied. NBHC affirmatively states that at no time did it breach the Agreement and, further, the Agreement has since terminated so there could be no continued breach in any event.

**SECOND CAUSE OF ACTION**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

36. NBHC incorporates herein by reference its prior responses in Paragraphs 1 through 35 above as if fully set forth herein.

37. Paragraph 37 contains a legal conclusion for which no response is required. To the extent a response is required, NBHC denies the allegations.

38. Denied.

39. Denied.

40. Denied.

41. Denied.

5

## **PRAYER FOR RELIEF**

42. NBHC denies that KJC is entitled to any of the relief claimed in the Prayer for Relief section, including but not limited to, the relief requested in sub paragraphs (a) through (d).

## **GENERAL DENIAL**

43. NBHC denies any and all averments and allegations in the Complaint that are not specifically admitted herein.

## **NBHC'S AFFIRMATIVE DEFENSES**

1. KJC fails to state a claim upon which relief may be granted.

2. KJC's claims or damages are barred, in whole or in part, as a result of its own conduct, negligence, or other actions or inactions, including its material breaches of the parties' Agreement.

3. KJC's claims or damages are barred, in whole or in part, because it was the first party to materially breach the Agreement and NBHC's obligations, if any, under the Agreement were excused.

4. KJC's claims or damages are barred, in whole or in part, because KJC failed to mitigate its damages, if any.

5. KJC's claims or damages are barred, in whole or in part, by the applicable statute of limitations or repose.

6. KJC's claims or damages are barred, in whole or in part, by the doctrines of estoppel, waiver, acquiescence, laches, unclean hands, and any other equitable defense

barring or limiting KJC's right to pursue its claims or damages based on KJC's own actions or inaction.

7. NBHC reserves the right to assert additional defenses as they become known through discovery.

## NBHC'S COUNTERCLAIMS AGAINST KJC

## PARTIES, JURISDICTION, AND VENUE

1. Upon information and belief, Kristopher James Company ("KJC") is a corporation organized and existing under the laws of the State of Texas, with its principal place of business located at 1406 Dunn Drive, Carrollton, Texas 75006.

2. National Bank Holdings Corporation ("NBHC") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 7800 East Orchard Rd., Suite 300, Greenwood Village, Colorado 80111.

3. This Court has jurisdiction under 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because NBHC and KJC regularly conduct business in Colorado and it is where KJC's wrongful conduct occurred and/or was directed.

## GENERAL ALLEGATIONS

5. NBHC is the holding company of NBH Bank. NBH Bank operates a number of bank branches.

6. On or about September 19, 2019, NBHC and Deluxe Financial Services, LLC d/b/a Deluxe Strategic Sourcing ("DSS"), entered into a certain Agreement for Use

of Expense Management Platform ("Agreement').

7. By information and belief, sometime in early 2022, KJC acquired DSS and became the true party in interest to the Agreement.

8. Pursuant to the Agreement, KJC was to provide certain office supply items and other services to NBHC ("DSS Sourced Products").

9. Further, the Agreement states that KJC "will ensure the quality of DSS Sourced Products reasonably conform to the specifications set forth in the purchase authorization/orders. DSS shall, at its option, either replace or repair any nonconforming DSS Sourced Products."

10. The Agreement also provides that "Title to DSS Sourced Products shall pass to [NBHC] upon [NBHC]'s purchase of DSS Sourced Products."

11. In other words, the parties agreed that NBHC owned the DSS Sourced Products as soon as NBHC purchased the products from KJC.

12. During the term of the Agreement, NBHC placed many orders with DSS and KJC.

13. However, the quality of products and services provided by KJC began having serious issues.

14. Specifically, KJC regularly failed to provide products that conformed with NBHC's purchase authorization/orders. Many of the product shipments contained damaged, incomplete, or otherwise incorrect orders. In addition, many other orders were not processed or shipped in a timely manner.

8

15. Making matters worse, NBHC followed up with KJC about these issues and KJC often failed to respond to the inquires, or when it did respond, it failed to take appropriate steps to remedy the problems.

16. Unfortunately, these were not isolated incidents. Instead, this became a regular business practice for KJC that went on for months.

17. But the problems were not limited to KJC's failure to provide conforming products under the Agreement. KJC actually refused to ship DSS Sourced Products to NBHC that NBHC had ordered and paid KJC for.

18. In other words, KJC refused to ship to NBHC products that NBHC had paid for, and pursuant to the terms of the parties' Agreement, NBHC owned and held absolute legal title to.

19. NBHC made repeated demands for KJC to provide NBHC the products it had paid for and rightly owned, but KJC refused those demands.

20. Not only did KJC refuse to ship those products, but it actually went further and demanded that NBHC provide consideration to KJC, that it had no legal right to demand and was not otherwise entitled to, before KJC would agree to return NBHC's property.

21. For example, KJC demands included, among other things, that (1) NBHC sign a release and waiver in favor of KJC related to the products that NBHC had purchased and owned; (2) pay for storage fees that KJC allegedly incurred as a result of its own failure and refusal to ship NBHC's property, despite repeated demands, over the course of many months; (3) pay separate and unrelated invoices, including interest, for

purchases made by NBHC after the products KJC was improperly holding and which payments NBHC was properly withholding as an offset to KJC's theft of NBHC's property; and (4) attempted to use and leverage its theft of NBHC's property in an effort to receive more favorable terms for an unrelated and unfounded dispute concerning KJC's allegations that NBHC did not purchase sufficient products from KJC.

22. NBHC made repeated demands over numerous months, including in writing, to KJC demanding that it return NBHC's property, but KJC refused to honor its contractual and legal obligations to return NBHC's property unless NBHC complied with KJC's other demands, mentioned above, that it was not entitled to.

23. The Agreement provides that the breaching party, here KJC, will pay the non-breaching party, here NBHC, "for all costs incurred by the non-breaching party to enforce its rights under this Agreement, including reasonable attorneys' fees and costs of discovery."

24. In an effort to try to cover up its misconduct and repeated material breaches of the Agreement and to attempt to further exert improper leverage on NBHC, KJC then preemptively initiated the underlying lawsuit.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**

25. NBHC incorporates the preceding paragraphs as if fully set forth herein.

26. As set forth above, NBHC and KJC are parties to the Agreement, which is a fully enforceable contract.

27. Pursuant to the Agreement, KJC agreed to provide certain products and services to NBHC.

28. In addition, KJC was obligated to ensure that the products that it provided to NBHC were accurate and conformed to the specifications set forth in the purchase authorization/orders.

29. In addition, in the event KJC failed to provide accurate and conforming products, KJC was required to replace or repair those products to ensure that they conformed.

30. The Agreement also provides that title and ownership to the products purchased under the Agreement passed to NBH upon the purchase of said products.

31. The Agreement required KJC to ship products to NBHC that NBHC purchased.

32. KJC breached its obligations under the Agreement by, including but not limited to, failing to provide conforming and accurate products, failing to replace or repair nonconforming products, failing and refusing to ship products that NBHC had ordered and paid for, charging NBHC for amounts not due and owed to KJC, including interest on invoices and storage fees for products KJC refused to ship to NBHC, and demanding NBHC provide KJC with other consideration, such as a release and waiver, that KJC was not entitled to before KJC would fulfill its obligations under the Agreement.

33. NBHC fulfilled all of its obligations pursuant to the Agreement.

34. As a result of KJC's breaches of the Agreement, NBHC has suffered damages in an amount to be proved at trial.

**SECOND CLAIM FOR RELIEF**
**(Breach of Duty of Good Faith and Fair Dealing)**

35. NBHC incorporates the preceding paragraphs as if fully set forth herein.

36.     The duty of good faith and fair dealing is implied in every contract.

37.     The duty of good faith and fair dealing requires any party that has discretion in fulfilling its obligations under a contract to exercise that discretion in good faith and consistent with principles of fair dealing.

38.     NBHC performed and fulfilled all of its obligations under the Agreement.

39.     KJC improperly exercised its discretion that it may have had under the terms of the Agreement in violation of the covenant of good faith and fair dealing and also attempted to exercise discretion in fulfilling its obligations under the Agreement where it had no such discretion.

40.     For example, KJC breached the covenant of good faith and fair dealing under the Agreement by, among other things, failing and refusing to ship products to NBHC that NBHC had purchased from KJC, pursuant to standard shipping schedules and practices; failing and refusing to ship products to NBHC unless NBHC agreed to provide KJC with additional consideration that KJC was not entitled to; charging NBHC additional amounts that were not permitted or due, including interest and storage fees; failing to provide conforming products reasonably consistent with the orders submitted by NBHC; failing to timely and appropriately address issues raised by NBHC about those nonconforming products, by, at KJC's option/discretion, replacing or repairing the nonconforming products.

41.     As a result of KJC's breaches, NBHC has been damaged in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
### (Civil Theft)

42. NBHC incorporates the preceding paragraphs as if fully set forth herein.

43. NBHC purchased certain products from KJC.

44. NBHC paid KJC for those products.

45. Pursuant to the terms of the Agreement and otherwise, title and ownership of those products passed to NBHC at the time of purchase.

46. As a result, NBHC owned these products.

47. KJC, however, knowingly and intentionally retained or exercised control over a thing of value, namely the purchased products, which legally belonged to and was owned by NBHC and without NBHC's authorization, and otherwise refused to provide the products to NBHC.

48. NBHC made repeated demands of KJC to provide NBHC the products that it owned.

49. Despite these repeated demands, KJC refused to ship the products to NBHC and, instead, continued to retain control and possession over the products.

50. Further, KJC demanded that NBHC provide KJC with consideration that it was not otherwise entitled to receive in exchange for returning NBHC's property.

51. For example, KJC improperly demanded the following consideration that it was not entitled to: (a) a release and waiver of liability from NBHC; (b) payment for storage fees that KJC allegedly incurred as a result of its own failure and refusal to ship NBHC's property, despite repeated demands, over the course of many months to ship the property; (c) payment of separate and unrelated invoices, including interest, for purchases

13

made by NBHC after the products KJC was improperly holding and which payments NBHC was properly withholding as an offset to KJC's theft of NBHC's property; and (d) using and leveraging its theft of NBHC's property in an effort to receive more favorable terms for an unrelated and unfounded dispute concerning KJC's allegations that NBHC did not purchase sufficient products from KJC.

52.    As such, KJC has committed civil theft and is liable to NBHC, pursuant to C.R.S. §§ 18-4-401, -405, for three times the amount of the actual damages suffered by NBHC for the theft committed by KJC, in an amount to be proved at trial, plus costs and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, NBHC prays for the following relief:

A.    A judgment in favor of NBHC and against KJC on NBHC's first claim for relief – breach of contract – along with an award of damages in an amount to be proved at trial, plus attorneys' fees and costs;

B.    A judgment in favor of NBHC and against KJC on NBHC's second claim for relief – breach of duty of good faith and fair dealing – along with an award of damages in an amount to be proved at trial, plus attorneys' fees and costs;

C.    A judgment in favor of NBHC and against KJC on NBHC's third claim for relief – civil theft – along with an award of damages for three times NBHC's actual damages, to be proved at trial, plus attorneys' fees and costs;

D.    An award of attorneys' fees and costs to NBHC and against KJC;

E. An award of pre and post judgment interest in favor of NBHC and against KJC; and

F. Such other relief in favor of NBHC that the Court deems just and appropriate.

Respectfully submitted this 10th day of February, 2025.

*s/ Zane A. Gilmer*
Zane A. Gilmer
**STINSON LLP**
1144 Fifteenth Street, Suite 2400
Denver, CO 80202
Phone: 303.376.8416
Email: zane.gilmer@stinson.com

*Attorney for National Bank Holdings Corporation*

15

**CERTIFICATE OF SERVICE**

I hereby certify, pursuant to D.C.COLO.LCivR 5.1(d), that on February 10, 2025, a true and correct copy of the foregoing Answer, Affirmative Defenses, and Counterclaims was electronically filed with the Clerk of Court using the CM/ECF system.

*s/ Zane A. Gilmer*
Zane A. Gilmer

16